IBM 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00673-CV







John Sharp, Comptroller of Public Accounts for the State of Texas, and Dan Morales,


Attorney General of the State of Texas, Appellants



v.



International Business Machines Corporation, Appellee








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT


NO. 91-10104, HONORABLE MARGARET COOPER, JUDGE PRESIDING








 Appellee International Business Machines ("IBM") sought a franchise tax refund
for the 1985 tax year which appellant John Sharp, Comptroller of Public Accounts
("Comptroller"), denied. IBM sued in district court to collect the refund, and the court granted
partial summary judgment in favor of IBM and denied the Comptroller's motion for summary
judgment. In four points of error, the Comptroller appeals, alleging that the trial court erred in
granting partial summary judgment to IBM and in denying the Comptroller's motion for summary
judgment because IBM's claims for refund of franchise tax are barred by: (1) the statute of
limitations of the Tax Code; and (2) IBM's failure to comply with the jurisdictional requirements
for suit prescribed by the Tax Code. We will affirm the judgment of the trial court.



 BACKGROUND


 The dispute in this case involves two requests by IBM for refund of part of its 1985
franchise tax. IBM's payment of franchise tax for the tax year 1985 was due on or before March
15, 1985. (1) IBM's franchise tax annual report was due before March 16, 1985. (2) IBM filed a
request for an extension of time to file its annual report with the Comptroller. Along with its
request for extension, IBM paid $4,188,000, an amount constituting 100% of the franchise tax
paid by IBM in 1984. See former § 171.202(c). The Comptroller granted IBM's request and
extended the time for filing IBM's annual report to June 17, 1985. On June 12, 1985, IBM filed
its 1985 annual report and remitted an additional payment of $1,666,790, which was the
difference between the actual amount of 1985 franchise tax owed by IBM according to the report
and the $4,188,000 previously paid pursuant to former section 171.202(c). 

 On June 2, 1989, IBM mailed an amended franchise tax report for the 1985 tax
year to the Comptroller and requested a refund in the amount of $227,084 (the "First Request"). 
After a hearing, the Comptroller denied IBM's First Request on the ground that the four-year
limitations period for filing such a refund request had expired. According to the Comptroller, the
limitations period began to run on March 16, 1985, the day after the last day the tax payment was
due under former section 171.152 of the Tax Code, and expired on March 16, 1989 before IBM
made its First Request. IBM filed a motion for rehearing on May 30, 1991, which the
Comptroller denied on June 20, 1991.

 On June 26, 1991, IBM filed a second amended franchise tax report for the 1985
tax year with the Comptroller requesting a refund of $1,990,684 (the "Second Request"). This
amount was in addition to the amount claimed in the First Request. Then, on July 18, 1991,
before the Comptroller took any action on its Second Request, IBM filed this suit contesting the
Comptroller's denial of the First Request and seeking a judgment of refund in the amount of
$2,217,768, a total representing both the First and Second Requests. Despite filing this suit on
the requests, IBM also requested that the Comptroller conduct a hearing on the Second Request. 
The Comptroller denied IBM's request.



DISCUSSION


 In its first and third points of error, the Comptroller contends that the trial court
erred in granting partial summary judgment to IBM and in denying the Comptroller's motion for
summary judgment because IBM's claims for refund of its 1985 franchise tax are barred by the
statute of limitations of the Texas Tax Code.

 The Texas Tax Code provides that a taxpayer has four years after a tax becomes
"due and payable" to request a refund. Tex. Tax Code Ann. §§ 111.107, .201 (West 1992 &
Supp. 1996). (3) Thus, in order to decide whether IBM's claims for refund of its 1985 franchise tax
are barred by limitations in this case, we must determine when IBM's franchise tax became "due
and payable." 

 The date that a tax is "due and payable" is the day after the last day on which a
payment is required by the chapter of the Tax Code imposing the tax. Tex. Tax Code Ann.
§ 111.204 (West 1992). Former section 171.152(c) of the Tax Code provided that payment of
the franchise tax was due on or before March 15 of each year except in certain situations
inapplicable to this case. Former section 171.202(b) of the 1985 Tax Code provided that a
corporation should file an annual report revealing its calculation of the franchise tax before March
16 of each year. The Comptroller contends that these sections of the Tax Code established two
separate obligations regarding the franchise tax and that March 15 was the only date established
by the Tax Code as the due date for IBM's 1985 franchise tax.

 The Comptroller agrees that former section 171.202(c)(1) and (c)(2) allowed an
extension of the due date for filing the annual report to any date on or before June 15 if the
taxpayer properly requested an extension and paid an amount of estimated tax in compliance with
the requirements of that section. The Comptroller argues, however, that former section 171.202
does not extend the time for actual payment of the franchise tax and that, despite the fact that IBM
obtained an extension to file its 1985 annual report, IBM's 1985 franchise tax was still due on
March 15. Accordingly, the Comptroller contends that the four-year limitations period began
March 16, 1985 and that the limitations period expired on March 16, 1989, seventy-eight days
before IBM filed its First Request for refund on June 2, 1989. 

 After submitting 100% of the amount of its 1984 franchise tax with its request for
extension, IBM received an extension to file its 1985 annual report on or before June 17, 1985
because June 15 was a Saturday. See former § 171.202. IBM contends that the extension of the
report due date also extended the due date for payment of the 1985 franchise tax, or at least of any
additional franchise tax due, to June 17, 1985. We agree.

 Section 111.051 of the Tax Code provides that the Comptroller may set the date
for filing a report for and making a payment of a tax imposed by the Code and that this date
prevails over any different date prescribed by the Code. Tex. Tax Code Ann. § 111.051(a), (b)
(West Supp. 1996). In 1985, the Comptroller had just enacted Rule 3.410 which addressed
extensions for the filing of annual reports. See 34 Tex. Admin. Code § 3.410 (West 1985) (now
34 Tex. Admin. Code § 3.545 (West 1996)). In pertinent part, Rule 3.410 stated:



(c) Penalty and interest will be calculated based on the following due dates:


 (1) If a corporation is granted an extension and pays at least 100% of the
tax paid in the previous calendar year on or before March 15, then
June 15 will be the due date for any additional tax due.


 (2) If a corporation is granted an extension and pays on or before March
15, 90% or more of the tax which will be reported as due on or before
June 15, then June 15 will be the due date for any additional tax due.


 (3) If a corporation timely requests an extension and pays at least $68 but
does not qualify for an extension under paragraph (1) or paragraph (2)
of this subsection, then March 15 is the due date for 90% of the tax
finally determined to be due and June 15 is the due date for 10% of the
tax finally determined to be due.



Id. § 3.410(c) (emphasis added).

 The Comptroller asserts that Rule 3.410 addressed the calculation of penalty and
interest without changing the due date of the franchise tax. Section 171.362(a) states that a
penalty is imposed on a corporation that fails to pay the tax when it is due and payable or fails to
file a report when it is due. Tex. Tax Code Ann. § 171.362(a) (West 1992). So, according to
the Comptroller, Rule 3.410(c) served simply to implement the extension to file the annual report
set forth in section 171.202 "by not penalizing a corporation that accurately estimated and paid
its tax obligation on the preceding March 15."

 An agency's interpretation of its own rules is entitled to great deference from
courts. Texas Water Comm'n v. Lakeshore Util. Co., 877 S.W.2d 814, 824 (Tex. App.--Austin
1994, writ denied). This deference, however, does not extend to agency interpretations that are
plainly erroneous or inconsistent with the text of a rule. Id. at 825.

 The Comptroller's interpretation of Rule 3.410(c) in this case is plainly erroneous
and inconsistent with the text of the rule. Rule 3.410(c) merely clarified that a new date on which
taxes become due and payable exists for purposes of calculating penalties and interest in a
situation where a request for an extension to file an annual report is granted. After being granted
an extension to file its 1985 franchise tax annual report under former Rule 3.410(c), IBM could
have paid either 100% of its 1984 franchise tax or 90% of its estimated 1985 franchise tax on or
before March 15, 1985. See 34 Tex. Admin. Code § 3.410 (West 1985). IBM elected to pay
100% of its 1984 franchise tax, and June 17 then became "the due date for any additional tax
due."

 IBM's franchise tax was due and payable on June 17, 1985 because June 15, 1985
was a Saturday. Thus, the limitations period on IBM's First Request would not have run until
June 17, 1989. IBM timely filed its First Request on June 2, 1989 at least two weeks prior to the
end of the limitations period.

 In regard to IBM's Second Request, section 111.207 of the Tax Code states in part
that, "[i]n determining the expiration date for filing a refund claim for a tax imposed by this title,
the period during which an administrative proceeding is pending before the comptroller for the
same period and type of tax is not considered." Tex. Tax Code Ann. § 111.207(d) (West 1992). 
IBM's Second Request involves the same period, tax year 1985, and the same type of tax,
franchise tax, as its First Request. IBM's First Request was pending before the Comptroller from
June 2, 1989, when it was filed, until June 20, 1991, when IBM's motion for rehearing on the
First Request was denied. Thus, the four-year limitations period, which would ordinarily have
run on June 17, 1989, was tolled from June 2, 1989 to June 20, 1991. IBM timely filed its
Second Request for a refund on June 26, 1991, six days after the end of the tolling period and
before the end of the four-year limitations period. Points of error one and three are overruled.

 In points of error two and four, the Comptroller argues that the trial court erred
in granting partial summary judgment to IBM and in denying the Comptroller's motion for
summary judgment because IBM's claims for refund of franchise tax are barred by IBM's failure
to comply with the jurisdictional requirements for suit prescribed by the Tax Code.

 In order to maintain an action against the Comptroller for a refund of taxes, a party
must meet the procedural requirements of the tax protest law. Bullock v. Marathon Oil Co., 798
S.W.2d 353, 360 (Tex. App.--Austin 1990, no writ). Compliance with these procedures is a
jurisdictional prerequisite for the trial court to hear and decide the merits of a tax refund suit. See
Robinson v. Bullock, 553 S.W.2d 196, 198 (Tex. Civ. App.--Austin 1977, writ ref'd n.r.e.), cert.
denied, 436 U.S. 918 (1978).

 Section 112.152 of the Tax Code provides that "[t]he grounds of error contained
in the motion for rehearing are the only issues that may be raised in a suit" seeking a refund of
taxes paid. Tex. Tax Code Ann. § 112.152 (West 1992). The Comptroller initially contends that
IBM's motion for rehearing addressed only whether its First Request for a refund was barred by
limitations and failed to identify that IBM asserted the tax had been overpaid because certain
reserve accounts were included in the calculation of surplus.

 In its motion for rehearing, IBM states:



The Comptroller erred in not finding and holding that Claimant has satisfied all
conditions to entitlement to the refund requested by Claimant and that the amount
of the refund to which Claimant is entitled is $227,084.00, plus interest to the
extent allowed under applicable law.



Although it is generally stated, IBM's motion for rehearing is sufficiently definite to identify that
IBM asserted the franchise tax had been overpaid and in light of the facts in this case satisfies
section 112.152.

 Comptroller Rule 1.5(c) provides that a taxpayer may request a refund of any tax
paid to the Comptroller in a writing which sets forth in detail the grounds on which the refund
claim is founded. 34 Tex. Admin. Code § 1.5 (West 1996). Rule 1.9(a) provides that, following
the receipt of the taxpayer's statement of grounds, a position letter will be sent to the taxpayer
which will "accept or reject, in whole or in part, each contention of the taxpayer." Id. § 1.9(a).

 In this case, IBM submitted as part of its First Request a letter stating that the
requested refund was based on the removal of reserve accounts from the calculation of surplus. 
The Comptroller did not dispute this statement. In fact, despite Rule 1.9(a), the position letter
sent by the hearings attorney representing the Comptroller's office stated that "[t]he sole issue for
consideration is whether Claimant's request for a refund of the overpayment of franchise tax for
report year 1985 was timely." After a hearing, an administrative law judge, considering only the
limitations issue, recommended that IBM's refund claim be denied. The Comptroller approved
this decision in an order dated May 10, 1991, and IBM timely filed its motion for rehearing.

 By not rejecting, in whole or in part, IBM's contention that it was entitled to a
refund based on the removal of reserve accounts from the calculation of surplus, the Comptroller
implicitly accepted it. After only considering the timeliness of IBM's First Request in its position
letter and in the hearing in front of the administrative law judge, and after solely basing its denial
of the request on it, the Comptroller cannot now dispute the specificity of IBM's motion for
rehearing. IBM's motion for rehearing properly identified that it had overpaid its franchise tax
and then primarily addressed the issue on which the Comptroller's denial of IBM's First Request
was based.

 The Comptroller further contends that the trial court had no jurisdiction over IBM's
Second Request because IBM did not file the motion for rehearing statutorily required to maintain
suit regarding the Second Request. IBM filed its Second Request for a refund on June 26, 1991. 
Then, on July 18, 1991, IBM filed this suit requesting the trial court to order a refund of both the
First and Second Requests.

 Section 112.151 of the Tax Code required IBM to file suit regarding its First
Request within 30 days after the denial of its motion for rehearing. Tex. Tax Code Ann.
§ 112.151 (West 1992). However, the Comptroller argues that any filing regarding the Second
Request was premature. Section 112.151 provides that a person may sue the Comptroller to
recover a refund claim if the person has filed a proper motion for rehearing that has been denied. 
Id. IBM did not file a motion for rehearing or even wait for a determination from the Comptroller
regarding its Second Request before filing suit. Accordingly, the Comptroller argues that IBM
wholly failed to comply with the conditions precedent for suit as found in section 112.151 of the
Tax Code.

 IBM admits that it did not file a motion for rehearing on the Second Request. IBM
contends, however, that it included the Second Request in its suit filed on July 18, 1991 to
preserve IBM's rights with respect to the Second Request against possible claims of res judicata,
to achieve judicial economy or to avoid piecemeal litigation.

 The Comptroller denied IBM's First Request, which was filed on June 2, 1989, as
being filed after the four-year limitations period had run. Then, on June 20, 1991, the
Comptroller denied IBM's motion for rehearing on the First Request. IBM filed its Second
Request on June 26, 1991. IBM was statutorily required to bring suit on its First Request before
the expiration of 30 days after the Comptroller's denial of the motion for rehearing or suit was
barred. So, on July 18, 1991, IBM filed suit on both its First and Second Requests even though
the Comptroller had not yet acted on the Second Request.

 The determination as to whether IBM's Second Request was timely filed depended
completely on whether its First Request was appropriately filed within the limitations period and
thus successfully tolled the limitations period during its pendency. It would have served no
purpose for IBM to obtain a hearing on its Second Request filed June 26, 1991 when its First
Request, filed over two years before, was denied because it was not timely filed. IBM's Second
Request would have been denied as would its motion for rehearing. Rather than perform an
exercise in futility, IBM elected to file suit on both requests at the same time.

 Although IBM has not fully complied with the procedural requirements of the Tax
Code, we find that, under the facts of this case, IBM's actions achieve judicial efficiency and
prevent unnecessary waste of judicial resources. See Estepp v. Miller, 731 S.W.2d 677, 680
(Tex. App.--Austin 1987, writ ref'd n.r.e.). Points of error two and four are overruled.



CONCLUSION


 Because we have overruled all of the Comptroller's points of error, we affirm the
judgment of the trial court.



 

 Jimmy Carroll, Chief Justice

Before Chief Justice Carroll, Justices Aboussie and Kidd

Affirmed

Filed: August 14, 1996 

Publish

1.   See Act of May 31, 1981, 67th Leg., R.S., ch. 389, § 1, 1981 Tex. Gen. Laws 1490,
1699, amended by Act of July 2, 1984, 68th Leg., 2nd C.S., ch. 10, art. 3, § 1, 1984 Tex.
Gen. Laws 67, 73 (current version at Tex. Tax Code Ann. § 171.152 (West 1992 & Supp.
1996)) ("former § 171.152").
2.   See Act of May 31, 1981, 67th Leg., R.S., ch. 389, § 171.202, 1981 Tex. Gen. Laws
1490, 1701, amended by Act of April 21, 1983, 68th Leg., R.S., ch. 63, § 2, 1983 Tex. Gen.
Laws 297, 297, amended by Act of July 2, 1984, 68th Leg., 2nd C.S., ch. 10, art. 3, § 3,
1984 Tex. Gen. Laws 67, 74 (current version at Tex. Tax Code Ann. § 171.202 (West 1992
& Supp. 1996)) ("former § 171.202").
3.   We recognize that the provisions of the Tax Code cited in this opinion have been
amended since the actions which gave rise to this suit occurred. But, because most of
these amendments do not affect the disposition of this suit, we cite to the current code for
convenience. As we have done in footnotes 1 and 2, however, we cite to any former Code
provisions in full if they have undergone changes relevant to this opinion.