# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-04-00261-CV

Local Neon Company, Inc., Appellant

v.

Carole Keeton Strayhorn, Comptroller of Public Accounts of the State of Texas,
and Greg Abbott, Attorney General of the State of Texas, Appellees

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
NO. 99-15042, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING

## MEMORANDUM OPINION

Local Neon Company, Inc. brought a tax protest suit against the Comptroller of Public Accounts of Texas[1] challenging the Comptroller's assessment of sales and use tax on Local Neon's business for the period of January 1, 1988 to March 31, 1995. Local Neon contends that insufficient nexus existed during this period to require it to collect Texas sales and use tax. *See* Tex. Tax Code Ann. § 151.107 (West 2003). After unsuccessfully pursuing lengthy redetermination proceedings with the Comptroller, Local Neon paid the assessed taxes under protest, filed a tax protest suit in district court under tax code section 112.052,[2] and made several claims for declaratory

---

[1] The Attorney General of the State of Texas, Greg Abbott, is also an appellee in this case. Because their interests are aligned, we refer to appellees collectively as "the Comptroller."

[2] Reference to statutes throughout the opinion are to tax code provisions unless otherwise noted. For convenience, citations to Texas Tax Code Annotated will be shortened to "Tax Code." Unless otherwise noted, these cited tax code provisions are found in the West 2003 main volume.

judgment under the Uniform Declaratory Judgments Act (UDJA) and the Administrative Procedures Act (APA), including claims challenging the constitutionality of various tax code statutes and rules. Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001–.011 (West 2003 & Supp. 2004-05); Tex. Gov't Code Ann. § 2001.038 (West 2000). In a plea to the jurisdiction, the Comptroller argued that Local Neon had not complied with the tax code's requirement to submit a protest letter to the Comptroller that states "fully and in detail each reason for recovering the payment" prior to bringing its tax protest lawsuit. Tax Code § 112.051(b). The district court sustained the Comptroller's plea to the jurisdiction, and Local Neon appealed. We affirm the judgment in part, reverse the judgment in part, and remand the cause for further proceedings.

## BACKGROUND

Local Neon is a California corporation that designs, manufactures, and sells neon signs to businesses. The Comptroller conducted an audit, determined that Local Neon had been doing business in Texas, and assessed a sales and use tax deficiency on Local Neon for the period of January 1, 1988 through March 31, 1995. The Comptroller's decision was based on various documents, including invoices showing installation and repair of signs in Texas, a purchase/security agreement showing that Local Neon agreed to design, build, deliver, and install items in Texas, and other records that demonstrated contacts made by Local Neon representatives in Texas. Notwithstanding the evidence gathered by the Comptroller, Local Neon disputed the assessment of the tax and requested a redetermination hearing. Tax Code § 111.009.

At the redetermination hearing, Local Neon asserted two arguments: (1) that the Comptroller could not require Local Neon to collect sales and use tax on its sales of signs to Texas

2

customers because it did not have sufficient contacts within Texas to establish a nexus in this State; and (2) that, because some of Local Neon's customers may have paid the tax assessed against Local Neon, the auditor's assessment of tax on Local Neon constituted double taxation. In September 1998, the administrative law judge denied both of Local Neon's contentions and recommended that the audit assessment be affirmed; the Comptroller accepted this recommendation in an order. Local Neon filed a motion for rehearing of the Comptroller's decision that was denied in November 1998.

In October 1999, Local Neon paid the assessed tax of $32,772.15 under protest. The letter accompanying the payment of the tax read as follows:

> Gentlemen:
>
> Enclosed please find the taxpayer's check in the amount of $32,772.15. This amount is being paid UNDER PROTEST.
>
> Should you have any questions, please let me know.

The letter was signed by Local Neon's counsel.

In December 1999, more than one year after the Comptroller denied Local Neon's motion for rehearing, the company filed the present tax protest lawsuit. In its original petition, Local Neon stated that it was bringing the suit "pursuant to the Texas Tax Code, and the Texas Declaratory Judgment Act." Local Neon sought a declaratory judgment that the tax "alleged by the Comptroller is not owed and the sums already paid to the Comptroller be refunded." Local Neon also sought attorney's fees pursuant to the UDJA.

In January 2000, the Comptroller filed a plea to the jurisdiction requesting that the district court dismiss Local Neon's tax protest suit. The Comptroller argued that Local Neon had

3

not complied with a jurisdictional prerequisite to maintaining a protest suit, found in tax code section 112.051(b) because it failed to submit a protest letter stating "fully and in detail each reason for recovering the payment" along with its payment. Over three years later, Local Neon filed its first amended original petition, and in that petition added several new claims seeking declaratory judgment.[3] In response, the Comptroller asserted that these additional claims had been filed for the purpose of attempting to confer jurisdiction on the district court. The Comptroller argued that the purpose of the lawsuit was simply to seek monetary damages from the State. The district court granted the Comptroller's plea to the jurisdiction.

---

[3] Pursuant to the Declaratory Judgments Act, Local Neon requested that the district court make the following thirteen declarations: (1) identify and determine whether Local Neon does business in Texas; (2) identify and determine whether the Comptroller can legally require Local Neon to collect and remit sales taxes to the State of Texas; (3) identify and determine whether Local Neon is a retailer within the meaning of section 151.107; (4) identify and determine whether section 151.107 is unconstitutional as applied to Local Neon; (5) identify and determine whether the tax the Comptroller seeks to impose upon Local Neon violates Local Neon's right of Due Process pursuant to the Fourteenth Amendment to the United States Constitution; (6) identify and determine whether the tax the Comptroller seeks to impose upon Local Neon violates article I, section 8 of the United States Constitution (the Commerce Clause); (7) identify and determine whether section 112.051 violates the open courts, equal protection, and due course of law provisions of the Texas Constitution; (8) identify and determine whether section 112.051 violates the equal protection and due process clauses of the Fourteenth Amendment to the United States Constitution; (9) identify and determine whether section 112.108 violates the open courts, equal protection, and due course of law provisions of the Texas Constitution; (10) identify and determine whether section 112.108 violates the equal protection and due process clauses of the Fourteenth Amendment; (11) identify and determine whether the Comptroller owes Local Neon a refund; (12) identify and determine the amount of the refund; and (13) identify and determine whether Local Neon is entitled to recover its reasonable and necessary attorney's fees in accordance with section 37.009 of the Texas Civil Practice and Remedies Code, if any. Local Neon also requested under the APA that the district court declare the regulation defining retailers who are "engaged in business" (34 Tex. Admin. Code § 3.286 (2003)) to be invalid and unconstitutional—both on its face (because it exceeds the statutory authority granted to the Comptroller by the legislature), and as applied to Local Neon (because it violates both Local Neon's due process rights and article I, section 8 of the United States Constitution). *See* Tex. Gov't Code Ann. § 2001.038 (West 2000).

## DISCUSSION

Local Neon's sole issue on appeal is whether the district court erred when it granted the Comptroller's plea to the jurisdiction regarding each of its claims. A plea to the jurisdiction challenges the district court's authority to determine a cause of action. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). To prevail on a plea to the jurisdiction, the defendant must show an incurable jurisdictional defect apparent from the face of the pleadings making it impossible for the plaintiff's petition to confer jurisdiction on the district court. *Bybee v. Fireman's Fund Ins. Co.*, 331 S.W.2d 910, 914 (Tex. 1960); *see Harris County v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004). Because a district court's granting of a plea to the jurisdiction presents a question of law, we review the district court's decision *de novo*. *Lukes v. Employees Ret. Sys.*, 59 S.W.3d 838, 841 (Tex. App.—Austin 2001, no pet.). In reviewing a plea to the jurisdiction, we liberally construe the pleadings in favor of jurisdiction, looking to the plaintiff's intent. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

To determine whether the district court properly granted the Comptroller's plea to the jurisdiction, we will consider Local Neon's tax protest suit and its claims under the UDJA in turn.

**The tax protest suit**

Local Neon argues that the district court had jurisdiction over the tax protest suit because, in the context of lengthy administrative proceedings that preceded the payment of the contested tax, the protest letter Local Neon submitted along with its payment substantially met the requirements of tax code section 112.051(b).

It is well recognized under Texas law that "there is no right to judicial review of an administrative order unless a statute provides a right or unless the order adversely affects a vested property right or otherwise violates a constitutional right." *Continental Cas. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 397 (Tex. 2000); *see also General Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 599 (Tex. 2001). The tax code provides two means for seeking judicial review of tax assessments made by the Comptroller: protest suits and refund suits. *Compare* Tax Code §§ 112.051, .052 (protest suits) *with id.* § 112.151 (refund suits). Because these statutes created a right not existing at common law and prescribed a remedy to enforce the right, courts may act only in the manner provided by these statutes. *See Robinson v. Bullock*, 553 S.W.2d 196, 197 (Tex. Civ. App.—Austin 1977, writ ref'd n.r.e.) (addressing predecessor statutes).

Despite the similar intent of both methods to provide access to a refund of taxes paid, the legislature created two distinct and exclusive remedies for tax refund suits and tax protest suits—each with different procedural requirements. *See Strayhorn v. Lexington Ins. Co.*, 128 S.W.3d 772, 779 (Tex. App.—Austin 2004, pet. filed). In a tax *refund* suit, a taxpayer must file a refund claim with the Comptroller providing the grounds on which the claim is founded, file a motion for rehearing with the Comptroller after the refund claim is denied, and file a refund suit within 30 days after the denial of that motion for rehearing. Tax Code § 112.151. In a tax *protest* suit, by contrast, a person must pay the amount assessed, submit with the tax payment a protest letter, and file suit within 90 days of the date payment was made under protest. *Id.* §§ 112.051-.052.

At issue in the present case is whether Local Neon's letter accompanying its payment under protest complied with tax code section 112.051(b). Section 112.051 states, in pertinent part:

(a) If a person who is required to pay a tax or fee imposed by this title or collected by the comptroller under any law, . . . contends that the tax or fee is unlawful or that the public official charged with the duty of collecting the tax or fee may not legally demand or collect the tax or fee, the person shall pay the amount claimed by the state, and if the person intends to bring suit under this subchapter, the person must submit with the payment a protest.

(b) The protest must be in writing and *must state fully and in detail each reason for recovering the payment*.

*Id.* (emphasis added).  Section 112.053(b) limits the issues to be determined in a protest suit "to those arising from the reasons expressed in the written protest as originally filed."

Local Neon does not assert that its protest letter stated fully and in detail each reason for recovering its payment; rather, Local Neon argues that, because it was "embroiled in conflict" with the Comptroller as to whether the company was subject to Texas's sales and use tax laws during the administrative hearing process that preceded Local Neon's payment under protest, the Comptroller was on "fair notice" of Local Neon's position.  Local Neon argues that its "putative lack of technical compliance" with the tax code's requirements did not deprive the district court of jurisdiction. *See Lexington,* 128 S.W.3d at 780.

In *Lexington*, this Court addressed the similar issue of whether the taxpayers had complied with the statutory requisites for bringing a tax *refund* suit under tax code section 112.151. 128 S.W.3d at 777.  Following an audit, the Comptroller assessed tax deficiencies against three surplus lines insurers. *Id.* at 775.  The insurers filed a redetermination request and, after a lengthy administrative process, the Comptroller signed an order affirming the tax assessment. *Id.* at 776. The insurers paid the taxes under protest and submitted letters with their protest payment that detailed the reasons the insurers protested the tax; the letters did not ask for a refund "or in any other

7

language seek the return of their money paid under protest." *Id.* at 777-78. The insurers then filed a lawsuit seeking declaratory judgment and a refund of the taxes paid.[4] *Id.* at 776-77. The district court granted summary judgment against the taxpayers for failure to exhaust their administrative remedies. *Id.* at 777. On appeal, this Court held that, although the protest letters did not contain a refund request, this Court "must analyze the protest letters in the context of the particular proceedings pending between the Insurers and the Comptroller." *Id.* at 779. Because the insurers and the Comptroller were "embroiled in conflict" as to the applicability of the tax in issue, this Court found that the insurers had substantially met the requirements of tax code section 112.151. *Id.* at 779, 781. This Court concluded that, although the protest letter did not explicitly state that the insurers were seeking a tax refund, the insurers' payment under protest "could not reasonably be regarded as anything but a request for a refund." *Id.* at 781.

The reasons for Local Neon's protest are not as clear as Lexington's desire for a refund and, more important, are not as clear as the tax code requires. In refund claims, the tax code does not explicitly require that the word "refund" be used, "but the desire for a refund must be apparent." *Id.* at 778. It was therefore possible to rely on Lexington's prior administrative proceeding in construing the payment under protest as a request for a refund. *See id*. By contrast, the tax protest statute requires that the taxpayer submit a letter which states "fully and in detail each reason for recovering the payment." While the lengthy administrative proceedings in this case may

---

[4] In *Lexington*, the Comptroller argued that, while the protest letter would have satisfied the requirements for bringing a tax protest lawsuit under tax code section 112.052, the insurers had not filed the suit within 90 days of making their protest payments, as required in order to bring a tax protest suit. *Strayhorn v. Lexington*, 128 S.W.3d 772, 777 (Tex. App.—Austin 2004, pet. filed).

8

have provided some notice to the Comptroller of the taxpayer's claims, we cannot ignore the plain and express requirement that the protest letter spell out the bases for the protest. *See Fitzgerald v. Advanced Spine Fixation*, 996 S.W.2d 864, 865 (Tex. 1999) ("[I]t is cardinal law in Texas that a court construes a statute, 'first, by looking to the plain and common meaning of the statute's words.'" (quoting *Liberty Mut. Ins. Co. v. Garrison Contractors*, 996 S.W.2d 482, 484 (Tex. 1998). Local Neon's failure to provide the required explanation fails to comply with the statutory requirements to invoke the jurisdiction of the trial court.

The specificity requirement does more than simply provide notice of a claim. *See James v. Consol. Steel Corp.*, 195 S.W.2d 955, 962 (Tex. Civ. App.—Austin 1946, writ ref'd n.r.e.); *accord Nu-Way Oil Co. v. Bullock*, 546 S.W.2d 336, 341 (Tex. Civ. App.—Austin 1976, no writ); *Lawrence Ind., Inc. v. Sharp*, 890 S.W.2d 886, 892 (Tex. App.—Austin 1994, writ denied). In *Consolidated Steel*, this Court mentioned two purposes of the tax protest statute:

> 1. To require the taxpayer to inform the collecting agency the grounds or reasons for such protest with sufficient clarity and detail for the agency to determine from its own records and the information furnished the merits and validity of the protest; and
> 2. To prevent the taxpayer, after he files suit, from changing to or asserting upon the trial other or different grounds from those stated in his protest. In other words, to prevent him after making his protest from subsequently taking advantage of the collecting agency upon such trial by "changing horses", so to speak, and having adjudicated grounds or reasons which the agency had not theretofore been called upon or had opportunity to determine.

195 S.W.2d at 962. This Court later wrote, "It is plain that the essential purpose of a written protest, timely filed and accompanying payment, is to give the agency, in this case the Comptroller, opportunity to review the reasons given for the protest and, if the protest is rejected, to defend suit

9

by the taxpayer upon the issues raised in the written protest." *Nu-Way*, 546 S.W.2d at 341. The bare statement that Local Neon paid the taxes under protest did not satisfy the purpose of the written protest requirement because the letter does not inform the Comptroller on what basis she must defend the suit.

The Texarkana Court of Appeals found a similarly terse protest letter inadequate to preserve the right to judicial review in *Brooks Operating Co., Inc. v. Bullock*, 668 S.W.2d 733, 735 (Tex. App.—Texarkana 1983, writ ref'd) (per curiam). The tax payment made was accompanied by a letter stating that the amount was "'paid under protest without waiver of any legal rights accruing to the taxpayer.' The letter did not state any reason why the demand was unlawful or unauthorized." *Id.* at 734. The court of appeals affirmed the district court's dismissal of the suit for lack of jurisdiction because the taxpayer's letter did not comply with the protest statute's requirement that such letters state the grounds on which the taxpayer claimed the tax was invalid. *Id*. at 735.

The tax protest letter in the present case is the same in all material respects as the letter in *Brooks*, and we agree with the Texarkana Court of Appeals's reasoning that a protest letter as written is insufficient to meet the requirements of tax code section 112.051.[5] Because Local Neon did not meet the requirements of tax code section 112.051, the district court did not err when it sustained the Comptroller's plea to the jurisdiction, insofar as it pertains to the tax protest suit brought under tax code section 112.052.

---

[5] The *Brooks* court was interpreting the predecessor statute to section 112.051. *See Brooks Operating Co., Inc. v. Bullock*, 668 S.W.2d 733, 734 (Tex. App.—Texarkana 1983, writ ref'd) (per curiam). The predecessor statute also required taxpayers to accompany the payment under protest with a letter "setting out fully and in detail each and every ground or reason why it is contended that such a demand is unlawful or unauthorized." *Id.*

**Local Neon's Declaratory Judgment Claims**

Local Neon also argues that the district court had no basis to dismiss for lack of jurisdiction its claims seeking declaratory relief. Local Neon asserts that the tax code remedies are not exclusive remedies precluding all actions for declaratory judgment.[6]

The UDJA is a remedial statute designed for any "person . . . whose rights, status, or other legal relations are affected by a statute," and provides a way to "have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status, or other legal relations thereunder." *Texas Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002); *see also* Tex. Civ. Prac. & Rem. Code §§ 37.002(b), 37.004(a) (West 2003). A declaratory-judgment action is neither legal nor equitable, but is *sui generis*. *Cobb v. Harrington*, 190 S.W.2d 709, 713 (Tex. 1945). The UDJA "is to be liberally construed and administered." Tex. Civ. Prac. & Rem. Code § 37.002(b). Because the UDJA is a "procedural device for deciding cases already within a court's jurisdiction[,] . . . [a] litigant's request for declaratory relief cannot confer jurisdiction on the court, nor can it change the basic character of a suit." *State v. Morales*, 869 S.W.2d 941, 947 (Tex. 1994); *see also Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993). The UDJA does not confer additional substantive rights on the parties, nor does it provide additional jurisdiction to the courts. *Kadish v. Pennington Assoc., L.P.*, 948 S.W.2d 301, 304 (Tex. App.—Houston [1st Dist.] 1995, no writ). The request for declaratory judgment

---

[6] Local Neon focuses intently on the Comptroller's contention below that tax code section 112.108 bars declaratory relief outside the tax code, but the Comptroller concedes on appeal that this Court held section 112.108 unconstitutional. *See Rylander v. Bandag Licensing Corp.*, 18 S.W.3d 296, 304 (Tex. App.—Austin 2000, pet. denied). The Comptroller contends that the dismissal stands on grounds independent of section 112.108.

under the APA has similar characteristics, but is the exclusive remedy for testing the validity of an administrative rule—which includes a challenge to the constitutionality of the rule. *See* Tex. Gov't Code Ann. § 2001.038; *Howell v. Texas Workers' Comp. Comm'n*, 143 S.W.3d 416, 442 (Tex. App.—Austin 2004, pet. denied) (APA is exclusive remedy); *Eldercare Props., Inc. v. Department of Human Servs.*, 63 S.W.3d 551, 558 (Tex. App.—Austin 2001, pet. denied) (validity includes constitutionality).

The Comptroller argues that the district court properly granted the plea to the jurisdiction against Local Neon's requests for declaratory judgments for several reasons. First, the Comptroller asserts that Local Neon was not seeking anything other than a tax refund, and sovereign immunity bars suits against the State for monetary damages disguised as declaratory-judgment actions. *See IT-Davy*, 74 S.W.3d at 855–56. To support her contention that Local Neon's sole purpose in bringing the lawsuit was to obtain a tax refund, the Comptroller cites to deposition testimony taken from Local Neon's representative, Scott Blakely, in which he stated that he would not be "satisfied" with a court's declaration that the tax was not owed without also getting a refund of the money Local Neon paid under protest. The Comptroller argues that this testimony, coupled with Local Neon's request for a declaration as to the amount of a refund it is entitled to, demonstrates that the company is attempting to impose liability upon the State for monetary damages, and is not interested in a declaratory judgment addressing the constitutionality of the tax protest statutes or the Comptroller's imposition of tax on the company. Next, the Comptroller argues that, because Local Neon only desires a tax refund, a declaratory judgment would not resolve the controversy between Local Neon and the State, and thus a declaratory judgment is inappropriate.

12

*See Texas Mun. Power Agency v. Public Util. Comm'n*, 100 S.W.3d 510, 518 n.6 (Tex. App.—Austin 2003, pet. denied). In that case, this Court held that a declaratory judgment is appropriate only if (1) a justiciable controversy exists as to the rights and status of the parties, and (2) the controversy will be resolved by the declaration sought. *Id*. Finally, the Comptroller argues that the declaratory judgment claims are "merely a pretext for seeking attorney's fees."

We will examine Local Neon's request for declarations relating to whether the Comptroller owes the company a refund before turning to its constitutional challenges.

### *Declaratory Relief: Request for a Tax Refund*

Among the requests for declaratory judgment included in Local Neon's first amended original petition is that the court, pursuant to the UDJA, "identify and determine whether the Comptroller . . . owes Plaintiff a refund," and "identify and determine the amount of the refund." On appeal, Local Neon does not specifically refer to these two declaratory judgment requests, but neither does it exclude these from the declaratory judgment claims it contends should not have been dismissed.

When a statute, such as the tax protest statute in the present case, provides an avenue for attacking an agency order, a declaratory judgment action directed at that order will not lie. *See Strayhorn v. Raytheon E-Sys., Inc.*, 101 S.W.3d 558, 572 (Tex. App.—Austin 2003, pet. denied); *Young Chevrolet, Inc. v. Texas Motor Vehicle Bd.*, 974 S.W.2d 906, 911 (Tex. App.—Austin 1998, pet. denied); *Ben Robinson Co. v. Texas Workers' Comp. Comm'n*, 934 S.W.2d 149, 153 (Tex. App.—Austin 1996, writ denied). This is so because a party is generally not entitled to redundant remedies. *See Young Chevrolet*, 974 S.W.2d at 911; *Ben Robinson*, 934 S.W.2d at 153. "There is

no basis for declaratory relief when a party is seeking in the same action a different, enforceable remedy, and a judicial declaration would add nothing to what would be implicit or express in a final judgment for the enforceable remedy." *Universal Printing Co. v. Premier Victorian Homes, Inc.*, 73 S.W.3d 283, 296 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). In *Raytheon*, the taxpayer (Raytheon) filed a tax refund suit and a declaratory judgment action pursuant to the UDJA. 101 S.W.3d at 562. Raytheon sought a declaration that the denial of the refund claims was unlawful and that the claimed items were exempt from sales tax. *Id*. at 572. After stating that this request for declaratory judgment incorporated a suit for a refund—relief already provided for under the tax code—this Court held that "Raytheon's request for statutory interpretation was merely another mechanism for asking the court to order the Comptroller to issue a sales tax refund. Thus, Raytheon's request for declaratory relief was redundant to its suit for a refund." *Id*. Because declaratory relief is improper if a statute provides the same remedy, this Court affirmed the order of the district court dismissing the taxpayer's request for declaratory relief. *Id*.

Local Neon's request for a declaration that the Comptroller owes Local Neon a refund in a particular amount involves the same issues that could be resolved in a tax protest lawsuit filed pursuant to the protest provisions of the tax code, or even in a properly filed tax refund suit. Because a declaration on these issues would be redundant and therefore improper, we affirm the district court's order sustaining the plea to the jurisdiction with respect to these claims. Insofar as Local Neon's requests for declarations about whether the company does business in Texas, whether the Comptroller can legally require Local Neon to collect and remit taxes to the State of Texas, and whether Local Neon is a retailer within the meaning of section 151.107, relate to issues that could

have been resolved by bringing a tax protest suit, we affirm the district court's order dismissing these claims.

### *Declaratory Relief: Constitutional Challenges*

Local Neon also requested several declarations regarding the constitutionality of the tax protest statutes and the Comptroller's imposition of tax on Local Neon.[7]

A request for a declaratory judgment to interpret the scope of an agency's statutory authority in light of a constitutional right or property interest is sufficient to invoke the district court's jurisdiction and to waive sovereign immunity. *Texas Mun. Power Agency*, 100 S.W.3d at 516. A request for a declaratory judgment regarding the constitutional validity of an agency rule is distinct from, and therefore not redundant to, a challenge to the correctness of the agency's order pursuant to that rule. *See Ben Robinson*, 934 S.W.2d at 153.

The supreme court has held that a court can entertain constitutional challenges to the tax code raised for the first time in a tax refund suit. *Central Power & Light Co. v. Sharp*, 960 S.W.2d 617, 618 (Tex. 1997) (per curiam). In that case, the district court dismissed CP&L's declaratory-judgment claims because CP&L failed to exhaust its administrative remedies before bringing its tax refund suit in district court—more specifically, CP&L failed to challenge the constitutionality of a statute in its motion for rehearing before the Comptroller. *Id.* The supreme court held that, because agencies lack the authority to declare the constitutionality of a statute, CP&L's failure to raise its constitutional claims in the motion for rehearing at the agency did not prohibit the district court from considering that claim when raised for the first time in the refund suit.

---

[7] *See supra* note 3.

15

*Id*. We believe that this rationale also applies to constitutional claims not included in a tax protest letter.

Local Neon's requests for declarations also appear to be more than a ruse to elude the bar of sovereign immunity. Declaratory judgment claims are inappropriate when they are used only in seeking a tax refund; as the supreme court stated in a breach-of-contract case against a state agency, "private parties cannot circumvent the State's sovereign immunity from suit by characterizing a suit for money damages . . . as a declaratory-judgment claim." *IT-Davy*, 74 S.W.3d at 856. Although the claims seeking declaratory relief regarding the amount of money owed to Local Neon by the State are barred by sovereign immunity as a suit for money damages, Local Neon's request for a declaration regarding the constitutionality of these statutes and rules is not an action which requires the State to pay money damages.

Construing Local Neon's petition liberally in favor of jurisdiction, we conclude that the district court erred when it granted the Comptroller's plea to the jurisdiction with respect to Local Neon's claims seeking declaratory relief regarding the constitutionality of the statutes and rules. Accordingly, we also find that the district court erred when it dismissed Local Neon's claim for reasonable attorney's fees under section 37.009 of the Texas Civil Practice and Remedies Code because the action for declaratory relief was not brought solely for the purpose of obtaining attorney's fees. Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2003) (authorizing award of "costs and reasonable and necessary attorney's fees as are equitable and just"); *see Texas Mun. Power Agency*, 100 S.W.3d at 517; *Texas Educ. Agency v. Leeper*, 893 S.W.2d 432, 446 (Tex. 1994) (allowing award for attorney's fees in suit challenging statute's construction).

**CONCLUSION**

We affirm the district court's order granting the Comptroller's plea to the jurisdiction insofar as it relates to the tax protest suit brought pursuant to the protest provisions of the tax code, as well as the claims made under the UDJA that request a declaration that the protest payments should be refunded and the amount of such refund. We also affirm the district court's order with respect to Local Neon's request that the district court determine whether Local Neon does business in Texas, whether the Comptroller can legally require Local Neon to collect and remit sales taxes to the State of Texas, and whether plaintiff is a retailer within the meaning of section 151.107, insofar as these requests relate to issues that could have been resolved by bringing a valid tax protest suit.

However, we reverse and remand the district court's dismissal of the following claims made by Local Neon that relate to the constitutionality of the protest statutes and the imposition of tax upon Local Neon:

- Identify and determine whether section 3.286 of the Texas Administrative Code is invalid and unconstitutional, both on its face (because it exceeds the statutory authority granted to the Comptroller by the legislature), and as applied to Local Neon (because it violates Local Neon's due process rights, and violates article I, section 8 of the United States Constitution).

- Identify and determine whether section 151.107 of the tax code is unconstitutional as applied to Local Neon;

- Identify and determine whether the tax the Comptroller seeks to impose upon Local Neon violates Local Neon's right of Due Process pursuant to the Fourteenth Amendment to the United States Constitution;

- Identify and determine whether the tax the Comptroller seeks to impose upon Local Neon violates article I, section 8 of the United States Constitution (the Commerce Clause);

17

- Identify and determine whether section 112.051 of the tax code violates the open courts, equal protection, and due course of law provisions of the Texas Constitution;

- Identify and determine whether section 112.051 of the tax code violates the equal protection and due process clauses of the Fourteenth Amendment to the United States Constitution;

- Identify and determine whether section 112.108 of the tax code violates the open courts, equal protection, and due course of law provisions of the Texas Constitution;

- Identify and determine whether section 112.108 of the tax code violates the equal protection and due process clauses of the Fourteenth Amendment.

We also reverse and remand the district court's dismissal of Local Neon's request for declaratory relief with respect to attorney's fees related to these claims.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed in Part; Reversed and Remanded in Part

Filed:   June 16, 2005