Gerald ESTEPP, Chairman of the Travis County Appraisal Review Board, et al., Appellants,

v.

John C. MILLER, Individually and as Executor of the Estate of Evelyn Scott Calhoun Deceased, et al., Appellees.

No. 14666.

Court of Appeals of Texas, Austin.

May 13, 1987.

Rehearing Denied June 17, 1987.

C. Richard Fine, Ray, Wood & Fine, Austin, for appellants.

Claude E. Ducloux, Robinson, Felts, Starnes, Angenend & Mashburn, Austin, for appellees.

Before SHANNON, C.J., and BRADY and CARROLL, JJ.

BRADY, Justice.

Gerald Estepp, the chairman of the Travis County Appraisal Review Board, and James Archer, chief appraiser of the Travis County Appraisal District, appeal from a judgment reducing the taxable value assigned by the Appraisal District to certain real property in Travis County. Appellants contend the trial court improperly assumed jurisdiction over both the 1984 and 1985 valuations although the original suit challenged only the 1984 appraisal. We will affirm the judgment.

The trial below initially only concerned appellee John C. Miller's 1984 appraisal. Miller had completed all statutory prerequisites for judicial review of the 1984 valuation by first filing a protest and then obtaining an adverse ruling from the Appraisal Board. Miller then appealed the decision of the Appraisal Board to the district court of Travis County. By the time the matter

came to trial, the taxes for 1985 had accrued. Because the Appraisal District had not revalued the property, Miller amended his trial pleadings to also challenge the valuation for 1985. Appellants contend the trial court did not have jurisdiction over the 1985 valuation because Miller failed to file a required protest for that year. *See Rockdale Independent School Dist. v. Thorndale Independent School Dist.*, 681 S.W.2d 225 (Tex.App.1984, writ ref'd n.r.e.). Accordingly, appellants also challenge the award of attorney's fees for the 1985 cause of action.

Appellee Miller argues he was not required to file a protest of the 1985 valuation with the Appraisal Board because a suit challenging an identical appraisal for 1984 was currently pending, thus the taxing authority had actual notice of his challenge to the valuation. Furthermore, appellee contends that the chief appraiser had a duty to notify him of the need to protest the valuation. Appellee also raises a cross-point asserting the trial court improperly refused to submit a jury issue on the reasonable value of an outside appraisal obtained by appellee to prosecute this litigation.

As authority for his contention that the taxing authorities had a duty to notify him of the need to protest, appellee cites Tex.Tax Code Ann. § 22.21 (1982). This statute provides:

> Each year the director of the State Property Tax Board and each chief appraiser shall publicize in a manner reasonably designed to notify all property owners the requirements of the law relating to filing rendition statements and property reports and the availability of forms.

Appellants admit Miller was not sent any kind of notice or advice that he should render his property or file a second protest for the year of 1985, but they deny any duty to send such a notice.

Appellee also contends another statute, Tex.Tax Code Ann. § 22.22 (1982), imposes a duty on the chief appraiser to notify taxpayers of the need to protest. That provision states:

> The chief appraiser may require a rendition statement or property report he is authorized to require by this chapter by delivering written notice that the statement or report is required to the person responsible for filing it. He shall attach to the notice a copy of the appropriate form.

Under this section, if the taxpayer is required by the chief appraiser to file a rendition of the property, then it is incumbent on the chief appraiser to make a request for the rendition and to transmit the proper form with that request.

■ While it is clear these statutes impose a duty on the chief appraiser to inform those taxpayers required to render their property of the necessary procedures, we do not believe these provisions are applicable to this situation. Appellee, as a non-commercial real estate owner, was not one of the individuals obligated to render his property under Chapter 22 of the Tax Code. Under § 22.03, a non-commercial taxpayer "may" render his property to show a decrease in value, but we note that any such rendition is optional. Because appellee was under no duty to render his property, we hold he was not entitled to the notification required by §§ 22.21 and 22.22.

■ Alternatively, appellee argues he should have received a notice of appraised value for 1985. We disagree. The times when the chief appraiser is required to send notices of appraised value are clearly established by statute. Under Tex.Tax Code Ann. § 25.19(a)(1) (1982), the chief appraiser is only required to deliver a written notice of the appraised value of a taxpayer's property if:

> (1) the appraised value of the property is greater than the value in the preceding year;
>
> (2) the appraised value is greater than the value rendered by the property owner; or
>
> (3) the property was not on the appraisal roll in the preceding year.

Under this section, the chief appraiser is under no obligation to notify the taxpayer of the appraised value if there is no alteration in that value from the previous year.

It is therefore incumbent on the taxpayer independently to render the property or otherwise file a notice of protest as in the year the initial appraisal was made. However, under the circumstances of this case, we do not think the taxpayer failed to comply with the requirements of establishing the necessary protest.

◼ The existence of a suit challenging the initial appraisal certainly put the Appraisal Board on notice that appellee also disputed the application of that improper appraisal to subsequent years. We note that under Tex.Tax Code Ann. § 41.44 (1982), a protesting taxpayer is required to file a "written notice of the protest with the appraisal review board," subsec. (a), but that a notice of protest is sufficient if it "identifies the protesting property owner and the property that is the subject of the protest and indicates apparent dissatisfaction with some determination of the appraisal office." Subsec. (d). Although no formal instrument entitled a "notice of protest" was delivered to the taxing authority for 1985, a suit challenging an identical appraisal for 1984 was pending at the time the notice of protest was due. This pending litigation clearly gave the Appraisal District notice of "apparent dissatisfaction" with the 1985 appraisal since that valuation was based on the same facts that justified the 1984 figure. Because the Appraisal Board had actual notice of these facts, we hold appellee complied with the requirements of § 41.44. If the Appraisal Board wanted to address the 1985 tax year separately, they could have required a rendition or sent a notice of appraised value. To hold otherwise would result in needless waste of judicial resources by creating a multiplicity of suits to determine the same facts.

◼ Appellants also argue the trial court did not have jurisdiction over the 1985 appraisal because there was no final order from the Appraisal Board for the district court to review. Again, we note the Appraisal Board had ruled against Miller's protest of the identical 1984 appraisal. By not revaluing the property for 1985, the Appraisal Board impliedly found that the same circumstances affecting market value existed in 1985 as in 1984. Hence, in the board's view, a factual determination of the proper value for 1984 would also be the proper value for 1985. If they thought otherwise, they certainly would have altered their appraisal. Since the taxing authority determined the circumstances affecting taxable value had not changed from 1984 to 1985, they should be bound by that decision. Under the facts of this case, we can see no reason to require re-litigation of a question which would be resolved by the same factual determination.

◼ In a cross-point, appellee complains of the trial court's refusal to allow a jury issue on the reasonable and necessary costs of an appraisal. Citing Tex.Tax Code Ann. § 42.07 (1982), appellee asserts that an appraisal fee was recoverable as a cost of the appeal. Section 42.07 provides:

> The reviewing court in its discretion may charge all or part of the costs of an appeal taken as provided by this chapter against any of the parties.

No court has yet interpreted this statute, but we find the use of the word "costs" is substantially similar to Tex.R.Civ.P.Ann. 131 (1979) which states:

> The successful party to a suit shall recover of his adversary all costs incurred therein, except where otherwise provided.

It has been held that Rule 131 does not authorize the recovery of fees for expert testimony. *Adams v. Stotts*, 667 S.W.2d 798, 801 (Tex.App.1983, no writ); *Whitley v. King*, 581 S.W.2d 541, 544 (Tex.Civ.App. 1979, no writ). While the court in *Adams* held that expenses of blood tests were costs under Rule 131, the court found the tests concerned were required by statute, and expressly re-affirmed the principle that expert fees are not costs. See *Adams* at 801. Therefore, we find no error in the trial court's refusal to submit that issue to the jury.

The judgment of the trial court is affirmed.

SHANNON, Chief Justice, concurring.

I concur in the affirmance of the judgment.

The taxpayers filed their petition in the district court of Travis County for review of the determination of the value of certain property by the Travis County Appraisal Review Board (The Board). Upon trial to a jury, the district court rendered judgment fixing the value of the property for 1984 and 1985. The Board perfected an appeal from that part of the judgment fixing the value of the property for 1985.

In their original petition, the taxpayers requested the district court to fix the value of the property for the 1984 tax year. The taxpayers later amended their pleading to include a request for determination of the value of the property for 1985.

In 1985, the Board neither lowered nor raised the valuation of the taxpayers' property, nor did the taxpayers render their property at a lower value. Stated differently, there was no new appraisal made of the property in 1985 and its value remained the same as in 1984. The taxpayers' petition for review of the 1984 appraisal pended in district court during 1985.

The Board attacks the judgment fixing the valuation for 1985 asserting that the district court was without power to entertain the taxpayers' claim for determination of the 1985 valuation of the property because the taxpayers failed to follow the administrative remedies afforded by the new Texas Property Tax Code Ann. (1982 and Supp.1987). In support of its position, the Board suggests, correctly, that the new Code makes the administrative and judicial review proceedings, therein set out, mandatory and exclusive. Tex.Prop.Tax Code Ann. § 42.09; *Valero Transmission Co. v. Hays Consolidated Independent School Dist.,* 704 S.W.2d 857 (Tex.App.1985, writ ref'd n.r.e.); *Texas Architectural Aggregate v. Adams,* 690 S.W.2d 640 (Tex.App. 1985, no writ).

Under the Code, administrative review of the Board's appraisal is set in motion by a change in valuation "that will result in an *increase* in the tax liability of the property owner." Section 41.11(a). (Emphasis added). The Board must notify the property owner in the event the change in valuation will result in an increase in his tax liability. *Id.* The property owner must then file a notice of protest within a time certain. Section 41.44. The Board then schedules a public hearing on the protest. Section 41.-45. After hearing, the Board determines the protest and notifies the property owner. Section 41.47. The property owner is entitled to appeal. Section 42.01. To pursue an appeal, the property owner must file a written notice of appeal with the Board within fifteen days from notification of the Board's order. Section 41.06. The property owner must then file his petition for review in district court within forty-five days after he received notice of the Board's final order. Section 42.21.

Should the appraised value of the property remain constant and should the property owner dispute that valuation, he *may* render it for the contended value. Section 22.01(c); § 22.03(a). The chief appraiser then makes a determination of the property owner's claim, § 22.03(b), and delivers him a written notice of the appraiser's determination. Section 22.03(c). If not satisfied, the property owner must then file written notice of protest, § 41.44, and so on.

As I understand, the administrative process becomes operative, pursuant to the Code, when the value of the subject property is increased, § 41.11(a), or when the property owner seeks a decrease in tax liability by rendering his property at a lower value. § 22.01(c); § 22.03(a). No language in § 22.01(c) or § 22.03(a), however, mandates that the property owner *must* render his property.

In this appeal, the appraised value of the property was not increased in 1985; instead, the value remained appraised at the 1984 value. The taxpayers did not render the property in 1985 at a lower value. The parties do not refer the Court to applicable provisions of the Code nor do the parties supply any on point authority to guide the Court. Under these facts, it seems to me doubtful that the provisions of the Code detailing administrative review govern the taxpayers' 1985 claim.

The taxpayers properly filed suit in district court attacking the Board's 1984 appraisal. The appraisal value of the property remained unchanged in 1985. Under such facts, and resolving any doubt in favor of the taxpayers, *Calvert v. Coke*, 458 S.W.2d 913 (Tex.1970), I conclude that the Code did not require the taxpayers to run the administrative gantlet in 1985 to obtain a judicial determination of the 1985 value. Instead, the taxpayers could, as they did, amend their petition to request a judicial determination of that value.