COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| MIDCON COMPRESSION, L.L.C, | § | |
| Appellant, | § | No. 08-13-00322-CV |
| | § | Appeal from the |
| v. | § | 143rd Judicial District Court |
| | § | of Reeves County, Texas |
| REEVES COUNTY APPRAISAL DISTRICT and LOVING COUNTY APPRAISAL DISTRICT, | § | (TC#12-11-20265-CVR) |
| Appellees. | § | |

## O P I N I O N

This is an ad-valorem tax case of first impression tried to the bench. The issues in this appeal, like those in three other cases on our docket, concern the taxation of natural gas pipeline compressor packages.[1] These compressor packages facilitate the production and processing of

---

[1] These cases are: (1) EXLP Leasing LLC and EES Leasing LLC v. Loving County Appraisal District, No. 08-13-00348-CV; (2) EXLP Leasing LLC and EES Leasing LLC v. Ward County Appraisal District, No. 08-13-00359-CV; and (3) Valerus Compression Services, a Texas Limited Partnership, and Valerus Compression Services Management, LLC, a Texas Limited Liability Company, General Partner v. Reeves County Appraisal District and Loving County Appraisal District, No. 08-13-00366-CV. Although this case differs both factually and procedurally from the others, it raises many of the issues present in those cases. The resolution of these issues is important to the parties involved in all the cases on our docket because millions of dollars are at stake. *See, e.g.,* Ender Reed & Connor McNally, *Heavy Equipment Tax Loophole Being Exploited*, TEX. ASS'N OF CNTYS. (March 27, 2015),http://county.org/Legislative/news/Pages/County%20Issues%2003-26-15/Companies-Exploit-Heavy-Equipment-Tax-Loophole.aspx (last visited September 21, 2015). It is also important to other entities not parties to these cases but with a vested interest in their outcome. One such entity is United Rentals, Inc., "the world's largest equipment-rental provider," who submitted an amicus curiae brief in this case and in the others supporting the "[c]ompressor [c]ompanies."

natural gas by regulating the pressure necessary to extract it and move it. In this case, the trial court ruled—as urged by Appellant—that sixty-four compressor packages (twenty-four located in Reeves County and forty in Loving County on January 1, 2012) qualified as heavy equipment. But the trial court ruled—as urged by Appellees—that taxable situs lay in Reeves and Loving Counties, that the statutory formulas for calculating the market value of heavy equipment inventory held for lease or rent and the tax due on it were unconstitutional as applied, and that Appellant was not entitled to attorney's fees. On appeal, Appellant contends that the trial court erred in so ruling. We affirm, in part, and reverse and render, in part.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant—MidCon Compression Services, L.L.C.—is in the business of renting compressor packages to third parties from eight yards located throughout Texas.[2] MidCon maintains a fleet of 3,300 compressor packages, each of which has a useful life of approximately twenty years. The sixty-four compressor packages in dispute here were leased to three entities—Access, Chesapeake, and Concho Oil and Gas—from yards located in Ector and Gray Counties. In 2011, MidCon received lease payments in the amount of $6,999,023.00 for compressor packages assigned to its Ector County yard and $7,252,471.00 for those assigned to its Gray County yard.

That same year, the Legislature amended the statutes governing the taxation of heavy equipment inventory: Sections 23.1241 and 23.1242 of the Texas Tax Code. *See* Act of May 21,

---

[2] At trial, the yards were described as:

> [H]ubs of our local operating area. It has our local management. It's also where we have our conversations with customers that have compression needs. That's where we will size the information that they give us to pick the appropriate compressor packages that fits their application, perform maintenance on those packages before they go to the jobsite, and then ship it.

2

2011, 82nd Leg., R.S., ch. 322, §§ 1, 2, 3, 2011 TEX.GEN.LAWS 938, 938-40. Of particular importance were changes to the statutory definitions of "dealer," "dealer's heavy equipment inventory," "sales price," and "total annual sales." *See id.* at §§ 1, 2, 2011 TEX.GEN.LAWS 938, 938-40; TEX.TAX CODE ANN. § 23.1241(a)(1)(defining "dealer"), TEX.TAX CODE ANN. § 23.1241(a)(2)(defining "dealer's heavy equipment inventory"), TEX.TAX CODE ANN. § 23.1241(a)(7)(defining "sales price"), TEX.TAX CODE ANN. § 23.1241(a)(9)(defining "total annual sales")(West 2015). These changes, which became effective January 1, 2012, altered the formulas for calculating the market value of heavy equipment inventory and the tax due on it. *See id.* at §§ 9, 10, 2011 TEX.GEN.LAWS 938, 941; TEX.TAX CODE ANN. § 23.1241(b)(establishing formula for calculating market value of heavy equipment inventory for ad valorem purposes), TEX.TAX CODE ANN. § 23.1241(b-1)(clarifying that market value of item of heavy equipment lease or rented then sold is the sales price plus the lease and rental payments), TEX.TAX CODE ANN. § 23.1242(a)(4)(defining "unit property tax factor"), TEX.TAX CODE ANN. § 23.1242(b)(establishing formula for calculating the unit property tax of each item of heavy equipment).

Previously, only dealers holding items of heavy equipment inventory for sale (or for lease or rent with an option to purchase) could calculate the market value of their inventory based on sales for the previous tax year, divided by twelve. *See* Act of May 20, 1997, 75th Leg., R.S., ch. 1184, § 2, 1997 TEX.GEN.LAWS 4564, 4565-68 (amended 1999); Act of May 28, 1999, 76th Leg., R.S., ch. 1550, §§ 1, 2, 1999 TEX.GEN.LAWS 5337, 5337 (amended 2011). But beginning January 1, 2012, dealers holding items of heavy equipment inventory for lease or rent (not subject to an option to purchase) could calculate the market value of their inventory based on lease or

3

rental payments for the previous tax year, divided by twelve. Thus, as amended, the formulas for calculating the market value of heavy equipment inventory and the tax due on it encompassed the *total revenue* generated by a dealer's entire inventory—through sales and lease or rental payments—for the previous tax year, divided by twelve. *See* TEX.TAX CODE ANN. §§ 23.1241(b), 23.1241 (b-1), 23.1242(a)(4), 23.1242(b).[3]

---

[3] These subsections read as follows:

> [23.1241](b)  For the purpose of the computation of property tax, the market value of a dealer's heavy equipment inventory on January 1 is the total annual sales, less sales to dealers, fleet transactions, and subsequent sales, for the 12-month period corresponding to the preceding tax year, divided by 12.

> [23.1241](b-1)  For the purpose of the computation of property tax on the market value of the dealer's heavy equipment inventory, the sales price of an item of heavy equipment that is sold during the preceding tax year after being leased or rented for a portion of that same tax year is considered to be the sum of the sales price of the item plus the total lease and rental payments received for the item in the preceding tax year.

> .            .            .

> [23.1242](a)(4)  'Unit property tax factor' means a number equal to one-twelfth of the preceding year's aggregate ad valorem tax rate at the location where a dealer's heavy equipment inventory is located on January 1 of the current year.

> [23.1242](b)  Except for an item of heavy equipment sold to a dealer, an item of heavy equipment included in a fleet transaction, an item of heavy equipment that is the subject of a subsequent sale, or an item of heavy equipment that is subject to a lease or rental, an owner or a person who has agreed by contract to pay the owner's current year property taxes levied against the owner's heavy equipment inventory shall assign a unit property tax to each item of heavy equipment sold from a dealer's heavy equipment inventory. In the case of a lease or rental, the owner shall assign a unit property tax to each item of heavy equipment leased or rented. The unit property tax of each item of heavy equipment is determined by multiplying the sales price of the item or the monthly lease or rental payment received for the item, as applicable, by the unit property tax factor. If the transaction is a lease or rental, the owner shall collect the unit property tax from the lessee or renter at the time the lessee or renter submits payment for the lease or rental. The owner of the equipment shall state the amount of the unit property tax assigned as a separate line item on an invoice. On or before the 10th day of each month the owner shall, together with the statement filed by the owner as required by this section, deposit with the collector an amount equal to the total of unit property tax assigned to all items of heavy equipment sold, leased, or rented from the dealer's heavy equipment inventory in the preceding month to which a unit property tax was assigned. The money shall be deposited by the collector to the credit of the owner's escrow account for prepayment of property taxes as provided by this section. An escrow account required by this section is used to pay property taxes levied against the dealer's heavy equipment inventory, and the owner shall fund the escrow account as provided by this subsection.

Relying on the amendments to Sections 23.1241 and 23.1242, MidCon claimed that it was a dealer of heavy equipment inventory, that the sixty-four compressor packages qualified as heavy equipment, and that their market value was $1,129,292.00: the sum of $6,299,023.00 in lease payments for compressor packages assigned to its Ector County yard divided by 12 ($524,919.00 as rounded up) plus $7,252,471.00 in lease payment for compressor packages assigned to its Gray County yard divided by 12 ($604,373.00 as rounded up). In 2012, MidCon began paying the taxes due on this amount on a monthly basis to the taxing authorities in Ector and Gray Counties. As for the sixty-four compressor packages located in Reeves and Loving Counties, MidCon ascribed no value to them in renditions filed with Appellees—Reeves County Appraisal District and Loving County Appraisal District.[4]

The Appraisal Districts asserted that the compressor packages operating in their respective counties on January 1, 2012 were taxable as business personal property. *See* TEX.TAX CODE ANN. § 23.01(a)(West 2015)("Except as otherwise provided by this chapter, all taxable property is appraised at its market value as of January 1."). Consequently, each district placed on its appraisal roll the compressor packages located within its taxing jurisdiction and appraised them at market value. For the 2012 tax year, the twenty-four compressor packages in Reeves County were valued at $7,019,580.00 and the forty in Loving County at $12,944,000.00. MidCon protested the determinations that the compressor packages belonged on these counties' appraisal rolls and the valuations ascribed to them. The respective appraisal review boards ruled against MidCon, and it sought judicial review of these rulings.

---

TEX.TAX CODE ANN. §§ 23.1241(b), 23.1241 (b-1), 23.1242(a)(4), 23.1242(b)(West 2015).

[4] For easy reference, and unless otherwise indicated, we will refer to Appellees collectively as the Appraisal Districts.

In the trial court,[5] the Appraisal Districts argued that Sections 23.1241 and 23.1242 were unconstitutional on their face and as applied because they yielded "a tax not related to market value and unequal and not uniform compared to taxation of similar property." The Appraisal Districts also contended that, even if these formulas passed constitutional muster, MidCon could not take advantage of them because their compressor packages did not qualify as "heavy equipment" as that term is defined in Section 23.1241(a)(6). The Appraisal Districts further argued that any tax due was payable to Reeves and Loving Counties, not Ector and Gray Counties, because the compressor packages were located in Reeves and Loving Counties on January 1, 2012 and had been there for an extended period of time. Lastly, the Appraisal Districts asserted that MidCon was not entitled to attorney's fees because its lawsuits against them were "not an excessive value or unequal appraisal" cases. MidCon, of course, advocated the opposite.

The trial court ruled as follows:

> The Court finds that Sections 23.1241 and 23.1242 of the Texas Tax Code apply to the Compressor Packages and that the property is sitused in Reeves County and Loving County respectively as shown on the attached Exhibit A.
>
> However, it is further ORDERED, ADJUDGED and DECREED that the TEX. TAX CODE §§ 23.1241, 23.1242 are held to be unconstitutional as applied to the Compressor Packages.
>
> It is therefore ORDERED, ADJUDGED and DECREED that Plaintiff take nothing and that judgment enter for the Defendants.
>
> All costs are taxed to the Plaintiff for which the Defendants may recover. This judgment is final and appealable and disposes of all issues and parties in dispute herein. All relief not specifically granted is denied.

After MidCon requested, and the trial court issued findings of fact and conclusions of law, MidCon

---

[5] MidCon's two lawsuits were consolidated into one.

filed its notice of appeal.[6]

## MARKET VALUE

In its first issue, MidCon argues that the trial court erred in declaring that Sections 23.1241 and 23.1242 are unconstitutional as applied to the sixty-four compressors packages in dispute. We agree.

### *Standard of Review*

We presume a tax statute enacted by the legislature is constitutional, and a party challenging the constitutionality of a tax statute bears the burden to demonstrate its unlawfulness. *See Enron Corp. v. Spring Indep. Sch. Dist.*, 922 S.W.2d 931, 934, 936 (Tex. 1996). If a tax statute is reasonably susceptible to different constructions, one of which renders the statute constitutionally valid and one invalid, then we must adopt the construction upholding the validity of the enactment. *See Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1996).

### *Applicable Law*

Section 1 of article VIII of the Texas Constitution establishes the constitutional standard for taxation:

---

[6] The Appraisal Districts did not seek appellate review of the trial court's determination that the compressor packages qualified as heavy equipment. Nor do they complain of the trial court's denial of their facial challenge to the constitutionality of Sections 23.1241 and 23.1242. That being said, the Appraisal Districts invite us to affirm the trial court's judgment on that very ground, even though it was not raised in a cross-appeal. They contend that they were not required to file a cross-appeal raising this ground because they are not seeking more favorable relief than that granted by the trial court—a take-nothing judgment—but "are merely presenting additional, independent grounds for affirming the trial court's judgment in appealing the denial of a facial challenge." A party may raise an independent ground for obtaining the same relief awarded in the judgment as a cross-point on appeal. *Gotham Ins. Co. v. Warren E & P, Inc.*, 455 S.W.3d 558, 566 (Tex. 2014). But a party a seeking greater relief than that awarded in the judgment must file a notice of appeal. *Id*. Here, the Appraisal Districts sought a declaration that Sections 23.1241 and 23.1242 were unconstitutional on their face and applied. Although they prevailed on their applied-as challenge, they did not on their facial challenge. In its final judgment, the trial court ruled that "[a]ll relief not specifically granted is denied." By asking us to affirm the trial court's judgment on a ground expressly denied by the trial court, the Appraisal Districts are seeking greater relief than that awarded in the judgment. Accordingly, the Appraisal Districts were required to raise their facial challenge in a cross-appeal. Because they did not, we do not address it.

Sec. 1.   (a)   Taxation shall be equal and uniform.

(b)   All real property and tangible personal property in this State . . . shall be taxed in proportion to its value, *which shall be ascertained as may be provided by law*. [Emphasis added].

TEX.CONST. art. VIII, § 1(a) and (b).   In accordance with these constitutional directives, ad valorem tax rates must be uniform for all types of property and ad valorem tax values must be based on the "market value" of the property.   *Enron Corp.*, 922 S.W.2d at 935; *Nootsie*, 925 S.W.2d at 661.

But the constitution does not prescribe a particular formula or standard for determining the "market value" of property.   *Enron Corp.*, 922 S.W.2d at 936.   Instead, it directs that "value" is to "be ascertained as may be provided by law."   *Id.*, *citing* TEX.CONST. art. VIII, § 1(b).   "The phrase 'as may be provided by law,' when used in a constitutional provision establishing a general legal principle or administrative framework, has been held to 'clearly vest[ ] the Legislature with the authority to exert substantial control over the mechanics of [the subject matter addressed].'" *Travis Cent. Appraisal Dist. v. FM Properties Operating Co.*, 947 S.W.2d 724, 733 (Tex.App.--Austin 1997, writ denied).   Because there are no specific requirements in the constitution for determining the market value of property, "the Legislature may classify property differently in arriving upon its market value[,]" "as long as the classifications are not unreasonable, arbitrary, or capricious."   *Enron Corp.*, 922 S.W.2d at 936.   If the Legislature adheres to this maxim in "classify[ing] property differently in arriving upon its market value[,]" "there is no constitutional impediment to utilizing differing methods for *determining market value for ad valorem tax purposes*."   [Emphasis in the original].   *Id.*   Accordingly, "the Legislature has the constitutional authority to provide for a method of determining the *market value of*

8

*inventory* that differs from the method for arriving upon the market value of other property."
[Emphasis added]. *Enron Corp.*, 922 S.W.2d at 936.

### *Discussion*

The Appraisal Districts have failed to demonstrate that Sections 23.1241 and 23.1242 are unconstitutional as applied to the sixty-four compressor packages in dispute.

### 1. In Proportion to its Value

The Appraisal Districts argue that Sections 23.1241 and 23.1242 violate the constitutional requirement that property be taxed in proportion to its market value because, for ad valorem purposes, "market value" means "fair market value," "cash market value," or "fair cash market value" as calculated under the "willing buyer-willing seller" test. Under this test, market value corresponds to:

> [T]he price which the property would bring when it is offered for sale by one who desires, but is not obliged to sell, and is bought by one who is under no necessity of buying it, taking into consideration all of the uses to which it is reasonably adaptable and for which it either is or in all reasonable probability will become available within the reasonable future.

*City of Austin v. Cannizzo*, 153 Tex. 324, 334, 267 S.W.2d 808, 815 (1954); *see* TEX.TAX CODE ANN. § 1.04(7)(A)-(C)(West 2013)(defining "market value" in a similar vein). The Legislature, according to the Appraisal Districts, acted unreasonably, arbitrarily, and capriciously by ignoring the willing buyer-willing seller test when amending Sections 23.1241 and 23.1242 because, under these statutes, taxation "based on a fraction of annual rental income . . . [can] never reflect the reasonable market value of the property." The Appraisal Districts' argument is unavailing.

To succeed in arguing that Sections 23.1241 and 23.1242 violate the constitutional requirement that property be taxed in proportion to its market value, the Appraisal Districts must

demonstrate that the only constitutionally-acceptable method for determining the market value of heavy equipment inventory held for lease or rent as a whole is to ascertain the prices at which each item of inventory would sell for in an arms-length transaction and aggregate them. *See FM Properties*, 947 S.W.2d at 733. Stated another way, the Appraisal Districts must prove that it is unreasonable, arbitrary, or capricious for the legislature to value heavy equipment inventory held for lease or rent based on the income generated by the items actually leased or rented. *See id.* The Appraisal Districts have failed to so prove. Put simply, it is not unreasonable, arbitrary, or capricious to determine the market value of heavy equipment inventory held for lease or rent based on the income generated by the items actually leased or rented. In fact, valuing heavy equipment inventory in this manner makes sense because inventory, by definition, is different than other types of property.

Inventory is an idle stock of physical goods a business holds on hand in the regular course of business awaiting consumption at a future point in time. *See FM Properties.*, 947 S.W.2d at 728, 730. Although each item of inventory has some economic value in an abstract sense, an owner does not capture the maximum economic value of each item while it sits idly generating no revenue. The maximum economic value of an item of inventory is unlocked when it generates revenue. Correspondingly, because inventory is not intended to be held for any period of time, capturing its value is difficult given that inventory levels tend to fluctuate significantly throughout the year. *Enron Corp.*, 922 S.W.2d at 939-40; *Expo Motorcars, L.L.C. v. Harris County Appraisal Dist.*, 01-08-00473-CV, 2009 WL 2232017, *4 (Tex.App.--Houston [1st Dist.] July 23, 2009, pet. denied)(mem. op.). Thus, given that the maximum economic value of inventory is tied to the revenues it generates and that value is a point-in-time estimate, it is neither unreasonable nor

10

arbitrary nor capricious for the Legislature to require use of a 12-month trailing, revenue-based method for valuing heavy equipment inventory held for lease or rent.

This method for valuing inventory of large, expensive goods is neither novel nor unique. The Legislature, "understand[ing] and correctly appreciate[ing] the needs of" businesses dealing with this type of inventory has responded by passing laws "directed to problems made manifest by experience[,]" *i.e.*, the special provisions permitting inventory involving motor vehicles, watercraft and outboard motors, manufactured housing, and—of course—heavy equipment, to be valued using a 12-month trailing revenue-based method. [Internal quotation marks and citations omitted]. *See Enron Corp.*, 922 S.W.2d at 934; TEX.TAX CODE ANN. § 23.121 (motor vehicles), TEX.TAX CODE ANN. § 23.124 (watercraft and outboard motors), TEX.TAX CODE ANN. § 23.1241 (heavy equipment), TEX.TAX CODE ANN. § 23.127 (manufactured housing). For inventory consisting of motor vehicles, watercraft and outboard motors, and manufactured housing, revenues are based on sales. *See* TEX.TAX CODE ANN. §§ 23.121, 23.124, 23.127. This sales-based method for ascertaining the market value of inventory has been upheld as constitutionally permissible because it is reasonable—not arbitrary or capricious—to require dealers to pay taxes only on inventory actually sold. *See Expo Motorcars*, 2009 WL 2232017 at \*4-\*5 (upholding the constitutionality of Section 23.121's method for calculating the market value of motor vehicle inventory as of January 1 of a tax year based on actual sales from the previous calendar year because a sales-based method, as opposed to single-date valuation method, achieves a more accurate reflection of the market value of motor vehicle inventory, since inventory levels fluctuate widely over the course of a year).

For heavy equipment inventory, revenues are based on sales and lease or rental payments.

11

*See* TEX.TAX CODE ANN. § 23.1241. The Appraisal Districts do not contend that the sales-based portion of the formula for calculating the market value of heavy equipment inventory is unconstitutional, likely because such a contention would be futile. *See Expo Motorcars*, 2009 WL 2232017, at *4-*5.[7] Instead, they contend that the lease- (and rental-) based portion of the formula is unconstitutional as applied to the sixty-four compressor packages in dispute because it "results in a valuation of 0% to 8.3% of their true market value." But just as it is eminently reasonable to require dealers of inventory held for sale in the ordinary course of business to pay taxes only on inventory actually sold, it is eminently reasonable to require dealers of inventory held for lease or rent in the ordinary course of business to pay taxes only on inventory actually leased or rented. The nature of the beast dictates this outcome.

An operating lease or rental transaction involving an item of heavy equipment is the purchase of a service produced by the lessor, not the purchase of a sale of a good. The lessee or renter is purchasing the right to use an item of heavy equipment for a specific period of time, and the item's value is derived from its use at that given moment in time. To the owner of an item of inventory producing lease or rental income, the value of such an item is the present worth of the future payments expected over the item's remaining service life. *See FM Properties*, 947 S.W.2d at 734. Given this economic reality, it is reasonable to calculate the market value of such an item, the efficiency and service life of which is declining during the lease or rental period, based on the current income generated by the item. By directing that the value of heavy equipment inventory held for lease and rent is equivalent to the income generated by the lease and rental payments, Section 23.1241 and 23.1242 "essentially require[] nothing more than that the inventory of a

---

[7] In their brief, the Appraisal Districts explained that "the vehicle inventory tax at issue in *Expo* does not bear the constitutional infirmities that leased heavy equipment, and particularly MidCon's Compressor Packages, suffers from heavy equipment dealer inventory tax."

business should, for taxation purposes, be considered as income-producing property and its market value determined pursuant to the income approach." *See FM Properties*, 947 S.W.2d at 734. Arguably, employing a 12-month trailing, revenue-based method for valuing heavy equipment inventory held for lease is inherently fairer and more likely to reflect the market value of that inventory than other approaches. Indeed, the Appraisal Districts' proposed method for determining the market value of MidCon's inventory—the sum of the prices each item of inventory would command if sold in arms-length transactions regardless of income generated by the inventory as a whole—is arguably unreasonable. Why insist on taxing an item of heavy equipment *inventory held for the sole purpose of generating income* based on a formula better suited for determining the market value of *individual goods held for sale*?

The answer, according to the Appraisal Districts, is because Sections 23.1241 and 23.1242 create a loophole permitting dealers of heavy equipment inventory held for lease or rent to escape taxation by mandating that the value of inventory as a whole does not include items not leased or rented, even though these items have substantial value if sold or owned outright. But that result is not determinative of whether Sections 23.1241 and 23.1242 are arbitrary, unreasonable, or capricious classifications by the Legislature. This is because the Legislature has the authority to implement tax policy inuring to the benefit of the taxpayer rather than to the state. *See Enron Corp.*, 922 S.W.2d at 939. As explained above, it is not unreasonable, arbitrary, or capricious to calculate the taxable value of heavy equipment inventory held for lease or rent based on the revenues generated by the portions of inventory actually leased or rented.

The Appraisal Districts, citing *FM Properties,* maintain that "[a]n amount that no willing buyer would pay for property is simply not market value." *See FM Properties*, 947 S.W.2d at

13

732, *citing City of Saginaw v. Garvey Elevators, Inc.*, 431 S.W.2d 575, 579 (Tex.Civ.App.--Fort Worth 1968, writ ref'd n.r.e.).  But *FM Properties* does not hold, and does not stand for the proposition, that the market value of inventory held for the sole purpose of generating income is determined by the sum of the prices each item of inventory would command if sold in arms-length transactions.  In fact, the court in *FM Properties* renounced this approach in valuing real estate inventory held for sale in the ordinary course of a trade or business.  The court concluded that valuing inventory as a unit based on "what a purchaser would pay for property at the present time in a single transaction," rather than on "what might be paid by dozens or even hundreds of purchasers if the property were sold in pieces over an extended period of time[,]" "is inherently fairer and more likely to produce true market value than other approaches such as multiplying the total number of inventory items on hand by the retail price of each individual item."  *FM Properties*, 947 S.W.2d at 729, 731.  It was in this context in which the court opined that "the number of lots times retail price of each lot" formula did not capture the inventory's "[m]arket value, as determinable through application of the 'willing buyer-seller test'" because this valuation method produced "[a]n amount that no willing buyer would pay for . . . [the] entire inventory of lots at a given point in time."  *See id*. at 732.

*FM Properties* actually supports the proposition that it is constitutionally permissible to determine the market value of heavy equipment inventory held for lease or rent based on the revenues generated by the portions of inventory actually leased or rented.  *FM Properties*, 947 S.W.2d at 731-34 (upholding the constitutionality of statutory method for calculating the market value of real estate inventory based on what a purchaser would pay for all of the inventory in a single transaction because this valuation method achieves a more accurate reflection of the market

14

value of real estate inventory held for as a unit for the purpose of generating income, since method, among other reasons, more painstakingly accounts for the net income that a potential purchaser might anticipate deriving from the purchase of the property, after the deduction of development and marketing costs and with due regard for the time value of money, rather than merely recognizing a gross income figure that might be anticipated from the sale of each particular parcel over a designated period of time without accounting for the inherent costs). Viewing *FM Properties* in this light is consistent with the constitutional requirement that value is "ascertained as may be provided by law" and is in accord with the Supreme Court's pronouncement in *Enron Corp.* that inventory may be valued differently than other types of property, as long as the standard for ascertaining its value is neither unreasonable, arbitrary, or capricious.

The Appraisal Districts also claim that MidCon is estopped from arguing that Section 23.1241 produces a reasonable estimate of market value or from denying that value as calculated under Section 23.01 is anything other than a property's true market value because "MidCon stipulated to 'market value' of its Compressor Packages under § 23.01." But the Appraisal Districts mischaracterize the nature of MidCon's stipulation and misstate its effect. MidCon did not stipulate that the value of the compressor packages as calculated under Section 23.01, as opposed to Section 23.1241, is the measure of their *true market value*. Instead, MidCon merely stipulated that, if Section 23.01 applied to the compressor packages, the Appraisal Districts' method would generate certain values on a unit-by-unit basis:

> 75. The parties hereto stipulate that the information on the attached spreadsheets, Exhibit 1 for Loving County and Exhibit 2 for Reeves County, are true and correct. The several columns therein represent the following information:

.      .      .

15

| | |
|---|---|
| 2012— HEDIT: | The approximate amount of taxes remitted by the plaintiff on that particular compressor package under § 23.1241, 23.1242 Texas Property Tax Code for 2012. |
| Sec. 23.01 Tax: | The amount of ad valorem tax that was individually assessed against the particular compressor package for 2012 under an appraisal pursuant to § 23.01 of the Texas Property Tax Code. |
| 2012 Calculation Under § 23.01: | The calculation under § 23.01 of the Texas Property Tax Code with respect to the particular compressor packages for 2012. |
| 2012 Calculation Under § 23.1241: | The calculation under Texas Property Tax Code § 23.1241 with respect to the particular compressor packages for 2012. |

Based on the foregoing discussion, we conclude that the Appraisal Districts have failed to demonstrate that Sections 23.1241 and 23.1242, as applied in this case, run afoul of the constitutional requirement that all property be taxed in proportion to its value. Accordingly, the trial court erred in concluding otherwise.

## 2. Equal and Uniform

The Appraisal Districts also contend that Sections 23.1241 and 23.1242 violate the constitutional requirement that taxation be equal and uniform because whereas similarly situated heavy equipment—owned pumps used at saltwater disposal wells—in Loving and Reeves Counties is appraised at full market value, leased compressor packages "would be appraised at a fraction of their annual leasing income[.]" The Appraisal Districts maintain that the principles of

16

equality and uniformity demand that the value of all property must be ascertain by the same standard, *i.e.*, market value under the willing buyer-willing seller test, even if property within the same class is taxed at the same rate. Thus, according to them, the Legislature acted unconstitutionally in "carv[ing] out a category of property for which it ignores the market value standard of taxation, while holding all other categories to the market value standard." The Appraisal Districts' contention is without merit.

The constitutional mandate of equality and uniformity requires only that all persons falling within the same class be taxed alike. *Hurt v. Cooper*, 130 Tex. 433, 110 S.W.2d 896, 901 (1937). In other words, a tax system must operate equally within each class. The relevant class here is dealers of heavy equipment inventory. Sections 23.1241 and 23.1242 apply even-handedly to this class because the amount of tax due on this type of inventory is always based upon the previous year's revenue, divided by 12. Because there is no evidence that this valuation method is not applied equally and uniformly to dealers of heavy equipment inventory, there is no disparate treatment within the class. That Sections 23.1241 and 23.1242 may produce disparate appraisal values among differently-situated taxpayers does not prove that are unequal and non-uniform.

We conclude that the Appraisal Districts have failed to prove that Sections 23.1241 and 23.1242, as applied in this case, violate the constitutional requirement that taxation be equal and uniform. Accordingly, the trial court erred in concluding otherwise.

MidCon's first issue is sustained.

## TAXABLE SITUS

In its second issue, MidCon contends that the trial court erred in declaring that taxable situs of the sixty-four compressor packages in dispute lay in Reeves and Loving Counties. We

17

disagree.

*Applicable Law*

Although not identified as such in the trial court's judgment, Section 21.02(a) of the Tax Code is the statutory basis for the trial court's conclusion that taxable situs lay in Reeves and Loving Counties. This statute, which codifies the so-called "mobilia" rule and its exceptions,[8] provides that:

> (a) [Except for certain inapplicable exceptions,] tangible personal property is taxable by a taxing unit if:
>
> (1) it is located in the unit on January 1 for more than a temporary period;
>
> (2) it normally is located in the unit, even though it is outside the unit on January 1, if it is outside the unit only temporarily;
>
> (3) it normally is returned to the unit between uses elsewhere and is not located in any one place for more than a temporary period; or
>
> (4) the owner resides (for property not used for business purposes) or maintains the owner's principal place of business in this state (for property used for business purposes) in the unit and the property is taxable in this state but does not have a taxable situs pursuant to Subdivisions (1) through (3) of this section.

TEX.TAX CODE ANN. § 21.02(a)(1)-(4)(West 2015); *see* TEX.CONST. art. VIII, § 11 (requiring that property be assessed for taxation and that taxes be paid in the county where it is situated).

As a general rule, courts presume that "the personalty in question has a tax situs within the taxing unit's jurisdiction." *Davis*, 632 S.W.2d at 335. To rebut this presumption, the taxpayer must present evidence that the property has not acquired situs in the jurisdiction and the taxpayer is not domiciled there, or that the property has acquired situs outside the tax authority's boundaries, or that a statute directs the property be taxed elsewhere. *Id.* Otherwise, the presumption becomes conclusive. *Id.*

---

[8] *See Davis v. City of Austin*, 632 S.W.2d 331 (Tex. 1982).

*Discussion*

MidCon has failed to rebut the presumption that, on January 1, 2012, taxable situs of the sixty-four compressor packages in dispute lay in Reeves and Loving Counties.

MidCon does not contend that Reeves and Loving Counties cannot tax the compressor packages because it neither conducts business nor maintains facilities in these counties. Nor does it contend that the compressor packages were not located in these counties for a sufficient amount of time to comply with the requirements of Section 21.02(a). To the contrary, MidCon asserts that fixing situs in accordance with Section 21.02(a) would run afoul of the "Legislature's intent to value heavy equipment inventory as a whole" and would be logistically impractical for taxing authorities in light of the transitory nature of the compressor packages. These potential pitfalls, according to MidCon, do not arise when situs is fixed at the business location from which each item of heavy equipment is rented as mandated by Section 23.1241(f) and the conforming administrative form promulgated by the comptroller. Proceeding under this theory, MidCon maintains that taxable situs of the sixty-four compressor packages in dispute lies in Gray and Ector Counties because these are the business locations of the compressor inventory. MidCon is mistaken.

Nothing in Section 23.1241(f) refers to taxable situs. The statutory language does not unambiguously direct that heavy equipment inventory be taxed at the business address of each location at which the dealer conducts business. Indeed, the statute does not even mandate that the dealer file the form with the appraisal district in which the inventory's business location is situated. So far as "business location" is concerned, Section 23.1241(f) fails to define this term and to distinguish between a dealer's principal place of business and other business locations. Nor, as

19

one of our sister courts noted in analyzing this statute, does it "provide instruction for a business to determine where, among different counties, it must pay taxes." *Valerus Compression Servs. v. Gregg Cnty. Appraisal Dist.*, 457 S.W.3d 520, 526 (Tex.App.--Tyler 2015, no pet.). Section 23.1241(f) merely directs a dealer of heavy equipment to file an inventory declaration form and identifies the information that the dealer must report to the taxing authorities:

> The comptroller by rule shall adopt a dealer's heavy equipment inventory declaration form. Except as provided by Section 23.1242(k), not later than February 1 of each year, or, in the case of a dealer who was not in business on January 1, not later than 30 days after commencement of business, each dealer shall file a declaration with the chief appraiser and file a copy with the collector. The declaration is sufficient to comply with this subsection if it sets forth:
>
> (1) the name and business address of each location at which the declarant conducts business;
>
> (2) a statement that the declarant is the owner of a dealer's heavy equipment inventory; and
>
> (3) the market value of the declarant's heavy equipment inventory for the current tax year as computed under Subsection (b).

TEX.TAX CODE ANN. § 23.1241(f).

Likewise, nothing in the form promulgated by the state comptroller, Form 50-265, refers to taxable situs. *See* Dealer's Heavy Equipment Inventory Declaration, http://www.comptroller.texas.gov/taxinfo/taxforms/50-265.pdf. Labeled "Dealer's Heavy Equipment Inventory Declaration," this form does not direct that heavy equipment inventory be taxed at the business address of each location at which the dealer conducts business. *See id.* Nor does it identify where taxes are to be paid. *See id.* Significantly, the form does not contain any information whatsoever helpful in determining taxable situs under Section 23.1241(f). *See id.* Due to these shortcomings, Form 50-265, according to the Tyler Court of Appeals, "cannot be

20

considered the comptroller's construction of Section 23.1241(f)." *Valerus*, 457 S.W.3d at 525.

In essence, the form "is nothing more than a form[:]"

> [R]equir[ing] the dealer's name, mailing address, and the 'name and physical business address of the business location of the inventory' . . . [and] instruct[ing] dealers to attach a list with the name and business address of each location at which it conducts business . . . [and] to provide the number of units for the business location and a breakdown of sales, leases, and rental amounts for the previous twelve month period.

*Id.*, *citing* Dealer's Heavy Equipment Inventory Declaration, http://www.comptroller.texas.gov/taxinfo/taxforms/50-265.pdf.

MidCon has failed to demonstrate that the Legislature intended to fix taxable situs of heavy equipment inventory at the business location from which each item of heavy equipment is rented. Accordingly, the trial court did not err in concluding that taxable situs of the sixty-four compressor packages in dispute lay in Reeves and Loving Counties, not Ector and Gray Counties. *See EXLP Leasing, LLC v. Galveston Cent. Appraisal Dist.,* No. 14-14-00268-CV, 2015 WL 5025534, at *6-*7 (Tex.App.--Houston [14th Dist.] Aug. 25, 2015, no pet. h.)(holding that Section 23.1241(f) does not address the taxable situs of heavy equipment inventory); *Valrus*, 457 S.W.3d at 523-27 (same).[9]

MidCon's second issue is overruled.

## ATTORNEY'S FEES

In its third issue, MidCon maintains that it is entitled to trial attorney's fees and appellate

---

[9] Appellees, in a letter brief to the Court, posits that *EXLP v. Galveston* stands for the proposition the application of Section 23.1241 does not "result in a reasonable market value[.]" However, the *EXLP* court did not reach the question of the constitutionality of Section 23.1241 and Section 23.1242, but rather concluded that neither party carried "their respective summary judgment burden[.]" *EXLP,* 2015 WL 5025534, at *1. The case was remanded to the trial court for "further proceedings on the constitutionality of Sections 23.1241 and 23.1242 as applied to the compression unit rental inventories at issue" because the trial court had "insufficient information to determine as a matter of law" that the statute's method of calculation "was not 'based on the[ir] reasonable market value.'" *EXLP,* 2015 WL 5025534, at *5-*6, *citing Enron*, 922 S.W.2d at 935.

21

costs under Sections 42.29 and 42.07, respectively, of the Texas Tax Code because "[t]he dispute over the correct appraisal value of the compressors was at the heart of the trial." We disagree.

### *Applicable Law*

Section 42.29 provides: "A property owner who prevails in an appeal to the court under Section 42.25 or Section 42.26 . . . may be awarded reasonable attorney's fees." TEX.TAX CODE ANN. § 42.29(a)(West 2015). Section 42.25 states: "If the court determines that the appraised value of property according to the appraisal roll exceeds the appraised value required by law, the property owner is entitled to a reduction of the appraised value on the appraisal roll to the *appraised value* determined by the court." [Emphasis added]. TEX.TAX CODE ANN. § 42.29. Section 42.26, which pertains to remedies for "unequal appraisals," is not in issue here. *See* TEX.TAX CODE ANN. § 42.26. Section 42.07 reads: "The reviewing court in its discretion may charge all or part of the costs of an appeal . . . against any of the parties." TEX.TAX CODE ANN. § 42.07.

### *Discussion*

MidCon cannot invoke Section 42.29 to collect trial attorney's fees because it did not prevail on a claim under Section 42.25.

Although MidCon contends that the dispute in this case concerns the correct appraisal value of the sixty-four compressor packages, the dispute is not so much about whether the appraised value is excessive as it is about whether Reeves and Loving Counties can tax the compressor packages as business personal property at all. In essence, MidCon is protesting the inclusion of the compressor packages on the appraisal rolls of these two counties, and this is borne out by its prayers for relief in its petitions against the Appraisal Districts. Because a challenge to

22

the inclusion of property on an appraisal roll cannot be characterized as one relating to excessive or unequal appraisal, attorney's fees for this type of protest are not recoverable under Section 42.29. *See Midland Cent. Appraisal Dist. v. BP Am. Prod. Co.*, 282 S.W.3d 215, 225-26 (Tex.App.--Eastland 2009, pet. denied)(taxpayer was not entitled to attorney's fees under Section 42.29 because successful challenge to ad valorem taxation on oil temporarily located in the county could not be categorized as a challenge regarding excessive or unequal appraisal); *Brazos Cnty. Appraisal Dist. v. Bryan-College Station Regional Ass'n of Realtors, Inc.*, 419 S.W.3d 462, 466-67 (Tex.App.--Waco 2013, pet. denied)(taxpayer was not entitled to attorney's fees under Section 42.29 because successful challenge to denial of property tax exemption could not be categorized as a challenge regarding excessive or unequal appraisal).

Furthermore, "Section 42.25 clearly contemplates a comparison of existing and court-determined values for the tax years at issue . . . ." *Dallas Cent. Appraisal Dist. v. Seven Inv. Co.*, 835 S.W.2d 75, 79 (Tex. 1992). Here, as in *Seven Inv.*, the trial court made no determination that the appraised value was excessive, thus requiring a reduction. MidCon suggests that the trial court did, in fact, make this determination because the trial court "agreed that Tax Code section 23.1241 supplied the correct appraisal value for the compressors[]" and because "[t]he parties stipulated to an estimate of this appraisal amount." But trial court was not asked to determine the value of the compressor packages, and nothing in the trial court's judgment or its findings of fact and conclusions of law establish that the trial court made this determination. Indeed, the trial court concluded that "[t]his suit is not a value dispute under TEX. TAX CODE §§ 42.25 OR 42.26 but rather concerns the classification of the Compressor Packages for a special appraisal under TEX. TAX CODE § 23.1241."

23

Likewise, MidCon cannot invoke Section 42.07 to recover its appellate costs. This statute grants us the discretion to award appellate costs against any of the parties. *See* TEX.TAX CODE ANN. § 42.07. Absent extraordinary circumstances, costs under Section 42.07 should be awarded to the prevailing party, just as costs under Rule 131 of the Texas Rules of Civil Procedure are awarded to the prevailing party. *See Estepp v. Miller*, 731 S.W.2d 677, 680 (Tex.App.--Austin 1987, writ ref'd n.r.e.)("No court has yet interpreted [Section 42.07], but we find the use of the word 'costs' is substantially similar to Tex.R.Civ.P.Ann. 131 . . . ."). A prevailing party is one who is vindicated by the judgment rendered on the main issue or issues even if not to the extent of its original contentions. *See In re S.E.C.*, No. 05-08-00781-CV, 2009 WL 3353624, at *3 (Tex.App.--Dallas Oct. 20, 2009, no pet.)(mem. op.); *Hawkins v. Ehler*, 100 S.W.3d 534, 544 (Tex.App.--Fort Worth 2003, no pet.). In this case, both parties prevailed because the judgment vindicates both. The general policy embodied by the appellate rules is to award costs in line with the results of the appeal. *See* TEX.R.APP.P. 43.5 (appellate costs should be awarded to prevailing party unless different disposition is required by law or for good cause). It is thus fair to require each party to pay its own costs when, as here, there is a mixed judgment. Accordingly, we exercise our discretion and direct the parties to bear their own costs on appeal.

MidCon's third issue is overruled.

**CONCLUSION**

The portion of the trial court's judgment declaring that Sections 23.1241 and 23.1242 are unconstitutional as applied to MidCon's compressor packages is reversed, and judgment is rendered that these two statutes are not unconstitutional as applied. In all other respects, the trial court's judgment is affirmed.

24

September 23, 2015

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, J., and Larsen, Senior Judge
Larsen, Senior Judge (Sitting by Assignment)

25